**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TROY HALSTEAD,

      Petitioner,                      Civil No. 2:12-CV-12613
                                      HONORABLE ARTHUR J. TARNOW
v.                                      UNITED STATES DISTRICT JUDGE

DUNCAN MaCLAREN,

      Respondent,

_____/

<u>OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS</u>
<u>CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY</u>

      Troy Halstead, ("petitioner"), confined at the Alger Correctional Facility in

Munising, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his habeas application, filed by attorney Robert L. Levi,

petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317.

For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I. Background

      Petitioner was originally charged with first-degree murder.  Following a jury

trial in the Genesee County Circuit Court, petitioner was convicted of the lesser

offense of second-degree murder.  This Court recites verbatim the relevant facts

relied upon by the Michigan Court of Appeals, which are presumed correct on

habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581

F.3d 410, 413 (6th Cir. 2009):

      Defendant's conviction arises from his participation in the brutal killing
      of Heath Tripp.  In the early morning hours of September 16, 2003,

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

after a night of drinking and partying, Kevin Werth, Brian Hunt, and defendant became involved in an altercation with Tripp, whom they had known for approximately one month. According to codefendant Werth, [1] defendant struck Tripp, who was extremely intoxicated, and knocked him to the ground. While Tripp was on the ground, defendant continued to assault him. Tripp did not fight back, and when defendant asked Hunt to help knock out Tripp, Hunt joined in the physical assault. Werth admitted that he also began hitting and kicking Tripp. At some point, defendant instructed Hunt and Werth to put Tripp into his own car. Defendant indicated that they were going to "get rid" of Tripp. Werth believed that they were going to drive Tripp to his girlfriend's house and leave him there. However, defendant drove to the Flint River and told Werth and Hunt to pull Tripp out of the car. Tripp, who was in the back seat, did not struggle. Defendant subsequently gave Werth a box cutter and told him to cut Tripp. Werth was scared and felt bad but, based on past experience, he believed that he had to follow defendant's instructions. Werth was afraid of the consequences if he chose to ignore them. Werth cut Tripp's neck in a superficial manner. Defendant subsequently carried Tripp into the Flint River and began drowning him. For the first time, Tripp started to struggle. Defendant, however, never removed his hands from Tripp until he went limp. Tripp's body was found on September 19, 2003. The cause of death was determined to be drowning with complicating blunt and sharp force trauma.

After the murder, defendant made statements to several people, implicating himself in the crime. Defendant's former girlfriend, Jennifer Winn, testified that in the early morning of September 16, 2003, defendant, Werth, and Hunt came to her house. The men were scared. Winn heard defendant instruct Werth to take his shoes and get rid of Tripp's car. When Hunt and Werth left, defendant confessed killing Tripp to Winn in some detail. Leatha Mann, another past girlfriend, testified that she picked defendant up from Winn's house in September 2003. Defendant told Leatha that he killed someone on the previous night. Leatha testified that, based on defendant's statements, she believed that defendant, Werth, and Hunt had murdered Tripp, who

---

[1]  Werth pleaded guilty to second-degree murder, MCL 750.317, for his participation in Tripp's death. (Footnote original).

2

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

Leatha did not know.  Leatha's brother, Charles Mann, was defendant's friend.  He testified that defendant confessed that he, Werth, and Hunt beat up Tripp, threw him in his car, and took him to the river. Defendant also admitted that he held Tripp under the water in the river after Werth slit Tripp's throat.  Defendant told Charles that Tripp was a "cocky asshole" and "deserved it."  The following day, Charles informed the police.  Charles's girlfriend was with him when defendant made his inculpatory statements.  She testified that she heard defendant say that "they" beat the hell out of someone, that Werth slit the person's throat, and that "they" threw the person in the river.

*People v. Halstead,* No. 260065, * 1-2 (Mich.Ct.App. June 13, 2006).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 477 Mich. 1003, 726 N.W. 2d 34 (2007); *reconsideration den.* 477 Mich. 1060, 728 N.W. 2d 442 (2007).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.,* which the trial court denied. *People v. Halstead,* No. 04-14477-FC (Genesee County Circuit Court, September 1, 2009). The Michigan appellate courts denied petitioner leave to appeal. *People v. Halstead,* No. 299974 (Mich.Ct.App. May 18, 2011); *lv. den.* 490 Mich. 969, 806 N.W. 2d 492 (2011); *reconsideration den.* 491 Mich. 912, 810 N.W. 2d 899 (2012).

Petitioner seeks a writ of habeas corpus on the following ground:

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

POLICE INTIMIDATION PLACED BRIAN HUNT IN A DOUBLE BIND REGARDING TESTIFYING AT TRIAL: IF HE GAVE THE INCULPATORY STORY THE POLICE HAD PRESSURED HIM INTO PARROTING DURING THE INTERROGATION, HE WOULD BE LYING; IF HE TOLD THE TRUTH AND TESTIFIED THAT HALSTEAD WAS INNOCENT, HE FEARED BEING CHARGED WITH PERJURY. THUS, POLICE INTIMIDATION THAT CAUSED HUNT TO WITHHOLD EXCULPATORY TESTIMONY CONSTITUTES A *BRADY* VIOLATION OF DUE PROCESS.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral

review of a state-court decision must be consistent with the respect due state

courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The "AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,'and 'demands that state-court decisions be given the benefit

of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v.

Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24

(2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on

the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct.

770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what

arguments or theories supported or...could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could

5

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

disagree that those arguments or theories are inconsistent with the holding in a

prior decision" of the Supreme Court. *Id.*

### III.  Discussion

Petitioner claims that a *Brady v. Maryland* violation occurred when the

police intimidated Brian Hunt, a possible accomplice to the murder, into

changing his story to them concerning petitioner's involvement in the murder,

which subsequently prevented Hunt from testifying as an alibi witness for

petitioner.

Respondent contends that petitioner's claim is procedurally defaulted

because he failed to properly exhaust this claim with the state courts and no

longer has an available state court remedy with which to properly exhaust this

claim.  Petitioner did not raise this claim on his direct appeal.  In his *pro per*

motion for relief from judgment and his supplemental motion for relief from

judgment that was filed by counsel, petitioner attached Mr. Hunt's 2007 affidavit,

in which Mr. Hunt claimed that he had been the victim of police intimidation

which caused him to change his story to the police and subsequently caused

Hunt to decide not to honor the prosecutor's subpoena and testify at petitioner's

trial.  Petitioner, however, did not raise any claim in either of his post-conviction

motions before the trial court that any *Brady* violation had occurred as a result of

6

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

this alleged police intimidation.  Petitioner only raised a *Brady* claim for the first time in his post-conviction appeal before the Michigan Court of Appeals.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971).  A petition for a writ of habeas corpus filed by a state prisoner shall not be granted unless the petitioner has exhausted his available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. *See Turner v. Bagley,* 401 F. 3d 718, 724 (6th Cir. 2005).

Petitioner failed to raise a *Brady* claim in his two motions for relief from judgment that he filed with the trial court.  In order to properly exhaust a claim on state post-conviction review, a habeas petitioner is required to present that claim in his post-conviction motion before the state trial court and in his post-conviction appeal to the state's appellate courts. *See Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009).

A number of cases have suggested that a habeas petitioner's failure to present an issue before a state trial court in a motion for post-conviction relief precludes a finding that the issue has been exhausted for purposes of habeas review, even if that issue is later presented on appeal to the state's appellate

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

courts from the denial of the post-conviction motion. *See Lindquist v. Gardner*,

770 F. 2d 876, 878 (9th Cir. 1985)(Idaho prisoner did not exhaust his state

remedies by presenting his claim to the Idaho Supreme Court in an original

habeas proceeding, where prisoner had a post-conviction remedy under the

Uniform Post-Conviction Procedure Act which he should have pursued in the

court in which he was convicted and sentenced); *Drake v. Wyrick*, 640 F. 2d

912, 916 (8th Cir. 1981)(petitioner failed to exhaust claim, where he did not

assert claim in his post-conviction motion, raising it for the first time on the

appeal of the denial of his post-conviction motion); *Lesure v. Atchison,* 891 F.

Supp. 2d 920, 925-26 (N.D. Ill. 2012)(petitioner's claim was procedurally

defaulted, where petitioner failed to present claim in his post-conviction petition

before the state trial court); *Middlebrook v. Carroll,* 470 F. Supp. 2d 411, 420 (D.

Del. 2007)(habeas petitioner procedurally defaulted his claim where petitioner

presented claim to state appellate court on post-conviction appeal without first

presenting it to state trial court in his motion for post-conviction relief); *Geraci v.

Senkowski*, 23 F. Supp. 2d 246, 265-266 (E.D.N.Y. 1998)(claim unexhausted

where petitioner did not present claim in either of his two post-conviction

motions, even though claim raised on appeal to the New York Court of Appeals);

*McLee v. Angelone*, 967 F. Supp. 152, 154-155 (E.D. Va. 1997)(prisoner failed

to exhaust claim that the Virginia Department of Corrections arbitrarily denied his

8

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

parole eligibility, where although he raised the claim in his reply briefs to his state habeas petition, the claim was not included in his original or amended state habeas petition, and was not addressed by the Department of Corrections or the Virginia Supreme Court); *Sanabria v. Morton*, 934 F. Supp. 138, 140-141 (D.N.J. 1996)(insufficiency of evidence claim not exhausted when claim raised for the first time in a supplemental postconviction relief petition for certification to the state Supreme Court).

Numerous judges in this district, including this Court, have held that a habeas petitioner's claims were not properly exhausted when they were not presented in the petitioner's post-conviction motion for relief from judgment before the trial court and were raised only for the first time in the application for leave to appeal to the Michigan Court of Appeals. *See Ceasar v. Warren,* No. 06–CV–15294, 2009 WL 1543327, * 4 (E.D. Mich. June 2, 2009)*; West v. Jones*, No. 06–CV–12057, 2008 WL 1902063, *11–12 (E.D. Mich. April 29, 2008); *Dorch v. Smith*, No. 01–CV–71206–DT, 2002 WL 32598987, *19 (E.D. Mich. Sept.11, 2002); *aff'd* 105 Fed. Appx. 650 (6th Cir. 2004); *Kincade v. Stegall,* No. 99–CV–76350–DT; 2001 WL 279751, * 5 (E.D. Mich. January 23, 2001).

Petitioner's *Brady* or witness intimidation claim is unexhausted, because he failed to present it in his motions for relief from judgment with the trial court.

9

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

Although petitioner attached Hunt's affidavits to his motions for relief from

judgment, in which Hunt claimed that he had been intimidated by the police into

not testifying, petitioner never raised a claim before the trial court in either of his

motions for relief from judgment that he had been denied due process or that his

rights under *Brady* had been violated by this alleged intimidation.  In order to

satisfy the exhaustion requirement, a habeas petitioner must fairly present to the

state courts either the substance of or the substantial equivalent of the federal

claim that he or she is presenting to a federal habeas court. *See Hicks v. Straub,*

377 F. 3d 538, 552 (6th Cir. 2004).  For purposes of federal habeas review,

exhaustion requires that a claim raised in a habeas petition must be presented to

the state courts under the same theory in which it is later presented in federal

court. *Williams v. Bagley,* 380 F. 3d 932, 969 (6th Cir. 2004).  A claim may be

considered "fairly presented" only if the petitioner asserted both the factual and

legal basis for his claim in the state courts. *Hicks,* 377 F. 3d at 552 (citing

*McMeans v. Brigano*, 228 F. 3d 674, 681 (6th Cir. 2000)).  Petitioner did not

present the legal basis of his claim to the state trial court in his motions for relief

from judgment.  Although petitioner may have briefly mentioned in his reply brief

that Hunt had been intimidated, petitioner never argued that this amounted to a

*Brady* violation nor did he even raise this as part of an independent claim.  A

habeas petitioner's "sporadic and undeveloped allusions" to a claim do not

10

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

satisfy the exhaustion requirement. *See Vasquez v. Jones,* 496 F. 3d 564, 568
(6th Cir. 2007).  Petitioner's claim was never presented to the state trial court in
either of his post-conviction motions for relief from judgment and is thus
unexhausted.

Unfortunately, petitioner no longer has any available state court remedies
with which to exhaust this claim.  Under M.C.R. 6.502(G)(1), a criminal
defendant in Michigan is only permitted to file one post-conviction motion for
relief from judgment. *See Gadomski v. Renico,* 258 Fed. Appx. 781, 783 (6th Cir.
2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Petitioner
has no remaining state court remedies with which to exhaust his claim.  If a
prisoner fails to present his claims to the state courts and he is now barred from
pursuing relief there, his petition should not be dismissed for lack of exhaustion
because there are simply no remedies available for him to exhaust.  However,
the prisoner will not be allowed to present claims never before presented in the
state courts unless he can show cause to excuse his failure to present the
claims in the state courts and actual prejudice to his defense at trial or on
appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995).  A claim of
actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196,
n. 3.

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

Petitioner first argues that his claim is not procedurally defaulted because the trial court did not rely on the provision of M.C.R. 6.508(D)(3) to deny him relief on his claims.  Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

Petitioner misapprehends the nature of respondent's procedural default argument.  Respondent does not argue that petitioner's claim is defaulted because he failed to raise it on his direct appeal and the trial court relied on this failure to deny petitioner relief on his claim on post-conviction review.  Instead, respondent contends that the claim is procedurally defaulted because petitioner did not properly exhaust the claim by presenting it to the state trial court in his motions for relief from judgment and no longer has a state court remedy with which to exhaust this claim.  Because petitioner's claim is procedurally defaulted on this basis, whether or not the state trial court denied petitioner's post-conviction motions pursuant to M.C.R. 6.508(D)(3) is irrelevant.

Petitioner further argues that any procedural default should be excused because he is actually innocent of the murder.  Petitioner has presented this Court with an affidavit from co-defendant Kevin Werth, dated January 8, 2007, in

12

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

which Werth recants his trial testimony and claims that petitioner had no

involvement in the murder.

Petitioner has also provided this Court with an affidavit from Brian Hunt,

dated November 20, 2007, in which Hunt claims that the victim and petitioner

were at his mother's home the night of the murder.  Hunt states that neither man

had been fighting or arguing.  Hunt claims that the victim left his home between

2 a.m. and 3 a.m.  Petitioner was lying on the couch as the victim left the home.

Hunt did not know whether petitioner was asleep or awake.  Hunt awoke the

next day between 2 p.m. and 3 p.m.  Hunt claims petitioner was in bed at the

time.  Petitioner claims that he spoke with the police on September 18, 2003 and

gave them this story.  Hunt claims that on September 21, 2003, he and his

mother were arrested by the police and taken to police headquarters and

interrogated sepately.  The detectives told Hunt that they believed that a fight

had taken place at the house between Werth and the victim.  Hunt claims that

the detectives warned him that unless he told the "truth" about what happened,

they would put him and his mother in prison for the rest of their lives.  At that

point, Hunt told the detectives that there had been a fight between Werth and the

victim at his mother's house and that petitioner had been involved in the murder.

Hunt claims he changed his story only because he was afraid that he and his

mother would go to prison for the rest of their lives if he did not.  Hunt indicates

13

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

that before petitioner's trial in 2004, he was served with a subpoena by the

police for the trial.  Hunt came for the first day of petitioner's trial, but did not stay

because he was afraid that if he testified about the first story that he had told the

police, he would be charged with perjury.  Hunt in his affidavit essentially recants

his second statement to the police, in which he implicated petitioner in the

murder.  Significantly, Hunt had previously signed an affidavit on July 21, 2006,

in which he indicated that he had informed petitioner's private investigator prior

to trial that he was willing to testify as an alibi witness for petitioner, but

mentioned nothing in this earlier affidavit about being pressured by the police

into making a false incriminating statement against petitioner or being afraid of

testifying on petitioner's behalf out of a fear of being prosecuted for perjury.

Recanting affidavits and witnesses are viewed with "extreme suspicion."

*United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991); *See also Byrd*

*v. Collins,* 209 F. 3d 486, 508, n. 16 (6th Cir. 2000).  Furthermore, a federal court

"may consider how the timing of the submission and the likely credibility of the

affiants bear on the probable reliability of that evidence." *Schlup v. Delo,* 513

U.S. 298, 332 (1995).

Werth did not sign his recanting affidavit until January 8, 2007, which was

more than two years after petitioner was convicted of this crime.  Hunt did not

14

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

sign his affidavit recanting his incriminating statement to the police until

November of 2007, some three years after petitioner's trial.

Werth's affidavit does not offer any convincing explanation as to why he waited more than two years to recant his trial testimony. *See Lewis v. Smith,* 100 Fed. Appx. 351, 355 (6th Cir. 2004)(proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010)(long-delayed affidavit of accomplice recanting statement to police did not establish petitioner's actual innocence where it was made almost two years after petitioner's trial).  In particular, Werth's affidavit is highly suspicious, in that the recantation came years after Werth had received his plea bargain for testifying against petitioner and had already been sentenced and thus had nothing to lose by recanting. *Strayhorn,* 718 F. Supp. 2d at 874.  This Court also notes that Werth was still in prison for his involvement in this murder at the time of this recantation. [2]  Jailhouse recantations usually lack any meaningful indicia of reliability and are "properly regarded as 'highly suspicious.'" *U.S. v. Connolly,* 504 F.3d 206, 215 (1st Cir. 2007)(internal quotation omitted).

Hunt in his affidavit offers no explanation why he waited three years after petitioner's trial to recant his incriminating statement to the police and is thus

---

[2]  Werth died in prison on December 10, 2010.

15

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

suspect. *Lewis v. Smith,* 100 Fed. Appx. at 355 (refusal of state appellate court

to admit into evidence post-trial affidavit of defendant's girlfriend, alleging that

police had intimidated her into changing trial testimony regarding defendant's

relationship with alleged sexual assault victim, did not violate defendant's due

process right to fair trial, where trial court had already found girlfriend's trial

testimony credible, and appellate court properly determined that affidavit

constituted inadmissible hearsay).  Mr. Hunt's 2007 affidavit is further suspect

because it conflicts with his earlier 2006 affidavit, in which he claimed that he

was willing to come to court and testify as an alibi witness for petitioner.

Because recantation testimony is regarded with "extreme suspicion,"

neither Werth's nor Hunt's alleged recantations are the type of reliable evidence

that would establish petitioner's actual innocence to excuse his default. *See*

*Carter v. Mitchell,* 443 F.3d 517, 539 (6th Cir. 2006).

Because petitioner has not presented any new reliable evidence that he is

innocent of the murder, a miscarriage of justice will not occur if the Court

declined to review petitioner's claim on the merits. *See Adams v. Smith*, 280 F.

Supp. 2d 704, 725 (E.D. Mich. 2003).

Finally, assuming that petitioner had established cause for his default, he

would be unable to satisfy the prejudice prong of the exception to the procedural

default rule, because his claim would not entitle him to relief.  The cause and

16

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).

First, to the extent that petitioner is claiming that the prosecutor somehow withheld exculpatory evidence, he would not be entitled to habeas relief on this claim, because his attorney was aware of Brian Hunt's proposed testimony prior to trial.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Petitioner is unable to show a *Brady* violation because he was aware of Brian Hunt and his proposed alibi testimony prior to trial. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Carter v. Bell,* 218 F. 3d 581, 601 (6th Cir.2000). The *Brady* rule does not assist a defendant who is aware of essential facts that would allow him or her to take advantage of the exculpatory evidence at issue. *Coleman v. Mitchell,* 268 F. 3d 417, 438 (6th Cir. 2001). Because petitioner was aware of Hunt's proposed alibi testimony prior to trial, petitioner is unable to establish a *Brady* violation.

17

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

To the extent that petitioner claims that he was prevented from calling Hunt as a witness because he had been intimidated by the police into changing his story, he would not be entitled to habeas relief either.

A criminal defendant has a due process right to present witnesses to establish a defense to the charges. *Washington v. Texas*, 388 U.S. 14, 19 (1967).  Although the right to present witnesses precludes prosecutors and judges from improperly threatening a defense witness with a perjury prosecution, *See Webb v. Texas*, 409 U.S. 95, 97-98 (1972), "*Webb*..does not stand for the proposition that merely warning a witness of the consequences of perjury demands reversal." *United States v. Pierce*, 62 F. 3d 818, 832 (6th Cir. 1995).  In fact, a prosecutor "has an obligation to warn unrepresented witnesses of [that] risk." *Id.*  Finally, to establish a claim of witness intimidation, a defendant must demonstrate "government conduct which amounts to substantial interference with a witness's free and unhampered determination to testify" and must prove that any inappropriate conduct was not harmless. *United States v. Foster*, 128 F. 3d 949, 953 (6th Cir. 1997).

In the present case, petitioner has failed to show that the police or the prosecutor intimidated Brian Hunt in order to prevent him from testifying for petitioner.  Hunt claims in his 2007 affidavit that he initially told the police that he did not witness any fights at his mother's house on the night of the murder, that

18

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

petitioner was still at his home when Hunt went to sleep, and that petitioner was

sleeping when he woke up the next afternoon.  Hunt claims that he changed his

story to the police a few days later after they threatened to put him and his

mother in prison for the rest of their lives.  Petitioner claims that Hunt was placed

in a "double bind" by police intimidation.  If Hunt testified as to the inculpatory

statement that he had given to the police, he would be lying, but if he provided

an alibi for petitioner, he feared that he would be charged with perjury.

Petitioner is not entitled to habeas relief on this claim for several reasons.

First, petitioner and Hunt both acknowledge that Hunt was subpoenaed by

the police to appear at petitioner's trial.  Hunt actually appeared in court for

petitioner's trial but then left because he did not want to testify.  The police made

subsequent attempts to locate Hunt, but were unable to locate him.  In this case,

neither the judge nor the prosecutor prevented petitioner from calling Hunt as a

witness.  Instead, Hunt could not be found by the police, in spite of substantial

efforts to locate him.  Under the circumstances, petitioner's right to present a

defense was not curtailed. *See e.g. Collier v. Lafler,* 419 Fed. Appx. 555, 559-60

(6th Cir. 2011).

Moreover, assuming that the detectives somehow intimidated Hunt into

not appearing in court, any error was harmless at most, because Hunt's

proposed testimony would not have absolved petitioner of the crime.  Hunt

19

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

indicates in his 2007 affidavit that the victim left his mother's house on the early

morning of September 16th between 2 and 3 a.m.  Hunt indicates that petitioner

was lying on the couch when the victim left but he was unsure whether he was

awake or asleep.  Hunt went into his bedroom and went to sleep.  Hunt claims

that when he woke the next day at between 2 and 3 p.m., petitioner was

sleeping in bed.  Even crediting Hunt's proposed testimony, the Court notes that

Hunt was asleep for up to twelve hours, during which time petitioner could have

left the house to commit the crime.  Because Hunt could not have provided an

"air-tight" alibi defense, his absence from petitioner's trial did not deprive

petitioner of a fair trial. *See e.g. Moore v. Parker*, 425 F. 3d 250, 253-54 (6th Cir.

2005).

Finally, Hunt's proposed testimony was cumulative of his mother Jerrie

Caldwell's trial testimony, in which she testified that petitioner had passed out on

the couch, the victim had left her house, that she had gone to sleep, and that

petitioner had come into bed with her early the next morning. (Tr. 10/29/04, pp.

32-39).

In light of the foregoing, petitioner is unable to establish that the alleged

intimidation of Brian Hunt by the detectives deprived petitioner of a fair trial.

Petitioner is not entitled to habeas relief on his claim.

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

**A certificate of appealability.**

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [3] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claim to be debatable.

---

[3]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

21

*Halstead v. MacLaren,* U.S.D.C. 2:12-CV-12613

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner

Halstead is not entitled to federal-habeas relief on the claims presented in her

petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**. (Dkt. # 1).

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: August 30, 2013

I hereby certify that a copy of the foregoing document was served upon
parties/counsel of record on August 30, 2013, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant